THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL FELICIANO ROMÁN, Defendant and Appellant.

No. 9591. Argued November 13, 1942.—Decided November 20, 1942.

*José Veray, Jr.*, for appellant. *M. Rodríguez Ramos, Acting Attorney General (George A. Malcolm, former Attorney General, on the brief) and R. A. Gómez, Prosecuting Attorney (Fiscal)*, for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The appellant was accused of the crime of voluntary manslaughter committed "maliciously and voluntarily, and upon a sudden quarrel and heat of passion."

After a trial by jury, the latter rendered a verdict of guilty, with a request for clemency. The court sentenced the defendant to a year in prison at hard labor.

This appeal is based on the allegation that the verdict rendered by the jury is contrary to the weight of the evidence.

According to the evidence submitted by the prosecuting attorney, the defendant used to work as a salesman at a small café in Aguadilla, where there entered, about 10:00 or 10:30 at night, Cayetano Cedeño and the deceased Francisco Ortiz, Jr., both of whom ordered a bottle of rum. After they had finished the rum, both individuals went out to the street and stood in front of the small café. The defendant approached them and told them that they had not paid for the rum and asked them to go and pay for it. The deceased replied that he should not be so upset, for he (the deceased) was a well-known person in Aguadilla and he was not going to avoid payment for a pint of rum.

Cedeño testified that after what we have just set forth had occurred, the three of them started walking towards the small café, the defendant in front, the deceased following him, and Cedeño bringing up the rear; that their attitude was peaceful; that upon reaching the small café, the deceased said to the defendant: "I am not going to welsh on 15 cents; leave me alone," that upon reaching the doorway, the defendant entered first, "and no sooner had Francisco

gone into the small café, when he put his foot on the first step, this defendant gave him the first blow'' with a bar; that the deceased did not do anything to the defendant before the latter struck him; that the deceased was not carrying anything in his hand; that the defendant clubbed Ortiz twice, first on the body and secondly on the head; that the only reason that defendant could have had to attack Ortiz was that the rum had not been paid for, because nothing else happened between them; that neither the witness nor the deceased were drunk at that moment, because they had only taken a pint between them.

Plácido Román, a witness for the prosecution, testified that he was inside the small café when the defendant assaulted Ortiz; that the defendant served a pint of rum to Ortiz and Cedeño, both of whom left the place after having finished it without paying therefor; that the defendant went after them and told them in an amiable fashion that they should come back and pay; and when they were returning "it looked as if Ortiz was going to attack Miguel and then Miguel ran, took the bar and hit him with it.'' At that moment, Ortiz did not have anything in his hand nor did he attack the accused, he merely jumped on him saying: "What is it that you want'' and then the defendant hit him with the door bar.

The testimony of Angel González, owner of the small café, corroborated in every detail the testimony given by Plácido Román. Jesús Grajales, an errand boy from the small café testified in the same fashion as his employer, adding that he saw what happened on the street between the defendant and Ortiz and Cedeño; that some words were spoken there between them which he did not understand well; that after the words the defendant went to the small café at a fast pace, entered and stood by the door; that when Ortiz arrived he stood on the first step and then the defendant hit him with the bar; that neither before nor at the moment

when he was hit did Ortiz do anything to the defendant; that "there were no attacks or assaults on the part of Ortiz or Cedeño toward the defendant"; that Cedeño said something there, but it was after the blow; that at the moment when he was hit neither Ortiz nor Cedeño had anything in their hands.

Juan Cordero Arbona, owner of a fruit peddling business located in front of the small café, testified substantially in the same way as the other witnesses with respect to the facts. He added that while he was standing by his push cart, he saw Ortiz and Cedeño go by and heard when the defendant called Ortiz and asked him: "Who is going to fix that?"; that Ortiz answered: "Ah, come here"; that he paid no more attention and went on selling; and sometime afterwards he saw the defendant rapidly walking towards the small café and Ortiz and Cedeño following him; that when they went by the fruit stand Cedeño told Ortiz: "Come on, Panchito, there is nothing to it"; that when they reached the small café, Ortiz stood by the sidewalk in front of the door and then the defendant came out and said: "On whose account are you going to drink that?; on account of your being a bully and a fresh guy; come on and hit me now"; that upon hearing those words Ortiz draw close to the door and then the defendant hit him with the door bar; that neither Ortiz nor Cedeño did anything at any moment to the defendant and that neither one nor the other had weapons in their hands while these events were occurring.

Francisco González Suárez, a lawyer, testified that he was at Arbona's fruit stand purchasing some fruits when he heard the conversation in which the defendant was asking Ortiz whether he was going to leave without paying and the latter was saying that he was not, that it was a small amount, that he lived in the vicinity and that he was not going to go away; that then the defendant told Ortiz to go to the small café and there to tell that to the owner; that

outside of those words, nothing happened between the defendant and the other two, and that he did not see them carrying anything in their hands either before or after the defendant attacked Ortiz. With respect to the way in which the defendant assaulted his victim, his testimony coincides with that given by the witnesses who preceded him.

The testimony of the defendant and his witnesses tended to prove that the defendant had acted in self-defense; that when defendant called Ortiz to collect the money for the rum, Ortiz said to him "come here and I will hit you"; that the defendant, thinking that he was going to be struck by Ortiz approached him and then the latter grabbed him forcefully by the arm while Cedeño slapped him; that the defendant then escaped, fearing that he would be struck; that at the moment in which he hit Ortiz with the bar the latter attacked him and threw a punch at him but could not hit him. The attorney for the defense submitted evidence to prove that the deceased was a bully, of a bad reputation and physically stronger than the defendant. Defendant admitted on the stand that neither Ortiz nor Cedeño had in their hands knives or any other weapon at any time.

The conflict in the evidence was decided by the jury against the defendant. And since the evidence submitted by the district attorney, to which the jury as sole judge of the facts gave credit, is sufficient to sustain the verdict, it is our duty to respect the judgment and affirm it.

■ The appellant can not complain of the penalty—a year in prison—imposed upon him for having killed a human being without any justification. It is possible that the judge of the lower court, in our opinion, erroneously believed that the recommendation to mercy made by the jury obliged him to impose a penalty which is entirely out of proportion with the gravity of the facts and the circumstances of the case.

The lower court, acting within the limit of the statute which imposes a maximum penalty of ten years imprisonment for the crime of voluntary manslaughter could, without ignoring the recommendation of the jury, have imposed an intermediate penalty as a fair punishment for the crime committed. And this court would have sustained it. Penalties should not be excessive, but they must not be so lenient as to convey to the minds of the citizens the idea that in our society it is possible to dispose of the life of our fellow creatures at such a low price.

The judgment must be affirmed.

Mr. Justice Snyder did not participate herein.